## MACK v. STATE OF INDIANA.*

[No. 25,879. Filed March 18, 1932.]

* Reported and annotated 83 A. L. R. 1349.

358

Frank Williams, George L. Hiteman, Spencer Adams, French & French and W. S. Henry, for appellant.

James M. Ogden, Attorney-General, and Harry L. Gause, Assistant Attorney-General, for the State.

MARTIN, J.—Ulysses Mack, alias "McNezzer," the appellant herein, was convicted of murdering, with an axe, during the perpetration of a robbery, in Gary, one Josephine Odorizzi, a young woman 20 years of age, and he has been sentenced, under §4, ch. 54, Acts 1929, §2412 Burns Supp. 1929, to suffer death by electrocution.

Appellant was indicted in Lake County March 29, 1929; on April 12, he appeared in person and by counsel in the Lake Criminal Court, was arraigned and pleaded not guilty; on May 18, he took a change of venue to Porter County; and on September 26, filed a motion for a continuance. The motion was overruled, but the court of its own motion ordered the trial of the cause postponed until October 21, on which date appellant filed a second motion for a continuance, which was overruled. He then asked leave to withdraw his plea of not guilty and to file a plea in abatement (which he submitted to the court), based on the ground that he "was not indicted by a fair and impartial grand jury," that two members of the grand jury were present and assisted the prosecuting attorney in securing a confession from him, and, by reason of that fact, were "witnesses

for the prosecution." Leave to withdraw his plea in bar and file the plea in abatement was denied, whereupon he filed a written motion for leave to withdraw his plea of not guilty and to file a motion to quash the indictment on the same general grounds, and this was denied. Thereupon, the trial proceeded, he was found guilty of murder in the first degree by a jury, and, on November 8, 1929, the death sentence was imposed upon him, which sentence has from time to time been stayed. His motion for a new trial was overruled November 20, 1929.

This appeal was filed (by appellant as a poor person at the expense of the county) and submitted under Rule 19 on March 3, 1930, and, upon the failure of appellant's attorney to file briefs within 90 days after the date of submission (Rule 21), the appeal was dismissed. Later (September 26, 1930), upon a showing made by other attorneys for appellant, the appeal was reinstated. Thereafter, the new attorneys repeatedly asked for additional time to file briefs, and, on June 8, 1931, the court entered the following order:

"Appellant's attorney is ordered to file the appellant's brief on or before July 29, 1931, and if he fails to do so the clerk is directed thereupon to dismiss this appeal. Clerk will notify appellant's attorney of this order."

Following the filing of appellant's brief July 28, 1931, appellee's brief December 23, 1931, and appellant's reply brief January 11, 1932, this cause was orally argued on March 11, 1932.

Fourteen alleged errors, most of which arise upon the overruling of appellant's motion for a new trial, are relied upon for reversal. In briefing the case, appellant's attorneys have not been accurate in their statement of the record and have argued a number of questions which are insufficiently raised. We have given careful con-

sideration to all such questions, however, since we believe, considering the record and the history of this appeal, that there is sufficient reason here, as there was in *McCutcheon* v. *State* (1927), 199 Ind. 247, 155 N. E. 544, for so doing. As stated in the case just cited, great care should be taken in reviewing capital convictions before we lend our sanction to the taking of a life, which, when taken away, we cannot restore, and especially is this so where, in addition to the confession and admissions of the defendant, the corroborating evidence is circumstantial.

The following, briefly, are the facts proved by the State: Josephine Odorizzi, a grocery clerk, age 20, who lived with her mother and stepfather, left her home in Gary at 7 p. m. Sunday, March 17, 1929, to go to the house of Margaret Massa, a girl friend, whom she had promised to visit if her young gentleman friend, Joe Garcia Ray, (who also worked at the grocery), did not come to see her that evening. On her person she had a few dollars in money and a gold wrist watch worth about $30. Ray called at Josephine's home about 10 minutes after she left, then went to Margaret's house and then drove his automobile around the neighborhood awhile looking for her, and not finding her, went to a dance with some friends.

The dead body of Josephine Odorizzi was found on Tuesday morning lying in a hole in the ground about two blocks from her home. It was lying face up, with all of the clothing pulled up above the stomach. The skull was fractured by three cuts in the back of the head by a sharp instrument. Two teeth had been knocked out, and there were bruises on the eyes, lower jaw, legs and buttocks. A physician who examined the body testified that the vagina was torn three-fourths of an inch on each side of the hymen, the deceased had been

raped, and her death was due to shock and hemorrhage, as a result of the fracture of the skull.

The appellant, Ulysses Mack, a negro truck driver, 29 years old, was in a barbecue stand on the Sunday evening Miss Odorizzi was killed. He had a large overcoat on and kept pulling something heavy under the coat up under his left arm. Several witnesses told of his having this heavy object under his coat. He left the barbecue about 7:30 and returned about 10:45. Mack spent considerable time around the railroad yards and posed as a railroad detective. On several occasions, he telephoned to the police station and represented himself as Mr. Clifford, who was a special police officer for the Pennsylvania Railroad, and at times called Clifford on the telephone for the purpose of finding out where the railroad officers were. Clifford and Bolden, another police officer, suspecting Mack of being the person who was making the telephone calls, went to Mack's house to investigate. While there the rays of their flashlight fell upon an axe which was under a stove. The axe had blood stains on both sides of its blade. Mack, when questioned by the officers about the blood stains, said he had killed a chicken with it four weeks before. When asked if that was all he had killed with it, he said that he had killed a duck with it shortly before that. He then told of splitting kindling with the axe after the killing of the fowls. After the officers demonstrated to him that the splitting of wood would have wiped off the blood, Mack then said that, on Monday morning about 2 a. m., the woman who lived with him as his wife had a nose bleed and in the dark walked around the stove trying to find something to bleed her nose in and it bled over the axe. Mack then being asked how the blood got on both sides of the axe when it was lying flat on the floor, refused to answer further questions.

(No evidence was offered as to whether the blood stains were of human or animal blood.)

Later, Mack told Bolden that he and his partner, Frank, killed Miss Odorizzi, and Bolden testified at the trial, giving in detail these admissions or confessions. Mack also signed a written confession, which was in the form of questions and answers taken down by a stenographer typed and signed. Mack signed by a mark, being illiterate (the only school he ever attended was in the State Reformatory where he served a term of imprisonment for vehicle taking). In this confession Mack told of meeting Frank about 7:30 p. m. on March 17, 1929, of their taking an axe with them and avoiding a policeman while walking the streets. In the first part of the confession, he stated that Frank hit the girl twice with the axe, but later he stated that he (Mack) hit her first and that "after I hit her and she fell down Frank said hit her again, hit her again, and I said no need of hitting her again and he said you ain't hit her hard enough to kill her, so he jerks the axe out of my hand and just as she fell and hit the sidewalk he hit her again. And I think that was the lick that killed her, because I didn't see her move after I seen him hit her the last time." Mack explained why he changed his statement as to his having hit the girl, as follows: "I just made up my mind to tell the truth because I were that far into it. If I tried to stick to what I said at first that I did not hit her, I would be just as deep into it as if I tell the truth." He told of Frank dragging the girl off the street into the weeds and of his standing watch for about 20 minutes while Frank robbed and raped the body. Mack and Frank left the scene of the crime and stopped on a sand hill where they divided the money taken from the girl, Mack taking $4, and Frank taking $5, the watch and a ring.

In the course of his confession, Mack stated that his original explanation of the blood on the axe was untrue and that "it was not my wife's blood." He admitted that he had represented himself to be a special agent for the railroad so as to explain his presence in the railroad yards, through which he made frequent trips to get alcohol. He admitted that he had the axe in the pocket of his overcoat at the time he was in the barbecue stand. The confession concluded with a statement that, at no time during his imprisonment at the county jail, had any police officer mistreated, beaten or in any other way forced him to make the statement, and that he made the statement of his own free will and without threats or promises of any kind.

The first error alleged by appellant is that the trial court erred in refusing to permit him to withdraw his plea of not guilty and interpose a plea in abatement or/and a motion to quash. Such requested action may, in a proper case, be taken, *Eshelman* v. *State* (1930), 201 Ind. 475, 169 N. E. 861, but the granting of the motion is within the sound discretion of the court, and the inquiry on appeal must be as to whether the court by its action abused that discretion. It is proper, in that connection, to take into account the question of the delay already had at the time the motion was filed, the question of cause shown, and the question as to whether or not the substantial rights of the appellant were prejudiced by the court's ruling.

The defendant and his attorney waited more than six months—from the date of his arraignment until he appeared on the date set for trial—to file the motion. There is nothing in the record to show what facts were presented to the trial court in support thereof, and the presumption of the law is in favor of the court's ruling. It does not appear that

appellant's defense was prejudiced by the action of the court, because neither of the motions which he proposed to file was sufficient to accomplish its prayer.

The grounds stated in the statute (§2127 Burns 1926) for challenging an individual grand juror before the jury is sworn, viz., that he "is a witness on the part of the prosecution" and "that such a state of mind exists on his part in reference to the party charged that he cannot act impartially and without prejudice to the substantial rights of the challenger," are not sufficient to sustain the plea in abatement here sought to be filed. We have no statute providing for the challenge of a grand juror by a defendant called to plead to an indictment, but such practice is allowed and approved in a proper case. *Eshelman* v. *State, supra.* An objection may be made going to the statutory qualifications of a grand juror or the lawful organization of the grand jury, such as that every juror must be a resident voter of the county and freeholder or householder (§1833 Burns 1926) ; but the rule has never been extended to permit one who is indicted to thereafter challenge a member of the grand jury on the ground that a grand juror was prejudiced against him. *Williams* v. *State* (1919), 188 Ind. 283, 298, 123 N. E. 209.

The motion to quash the indictment, which appellant proposed to file, alleged that the indictment was invalid, "for the reason that two members of the grand jury . . . assisted the police officer . . . in extorting confessions from said defendant . . . while held a prisoner" (which allegation is wholly unfounded in fact as will appear later). Motions to quash indictments reach only matters apparent on the face thereof, *Beard* v. *State* (1877), 57 Ind. 8; *Williams* v. *State, supra,* and irregularity in the selection, impaneling and swearing of the grand jury cannot be presented

by a motion to quash the indictment, *State* v. *Jackson* (1918), 187 Ind. 694, 697, 121 N. E. 114; *Katzen* v. *State* (1922), 192 Ind. 476, 137 N. E. 29. When an indictment has been returned into open court by a grand jury, duly endorsed by the foreman, it is conclusive evidence of the regularity of the finding, and it is not competent to inquire into the amount or kind of evidence upon which they acted, *Stephenson* v. *State* (1932), 179 N. E. (Ind.) 633; *Stewart* v. *State* (1865), 24 Ind. 142; *State* v. *Comer* (1902), 157 Ind. 611, 615, 62 N. E. 452.

Appellant contends that §4, ch. 54, Acts 1929, §2412 Burns Supp. 1929, which provides that: "Whoever, . . . in the perpetration of or attempt to perpetrate a rape, arson, robbery or burglary, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death," is unconstitutional because: (a) "It deprives the accused of life and liberty without due process of law"; (b) "it takes from the court or jury all discretion and makes it mandatory for the accused to be sentenced to death only"; (c) "it gives the trial court the right to pass sentence upon the accused and deprives the jury of its constitutional rights as judges of the law and the facts"; and (d) "it deprives the jury of its right to fix the penalty . . . and denies it the right to differentiate between the lesser and greater degrees of the offense." Due process of law, or "due course of law" in the courts is guaranteed by §12, Art. 1, Indiana Constitution, §64 Burns 1926 to "every man for injury done him in his person, property or reputation." The course of law guaranteed in criminal prosecutions is specifically stated in §§13-19, Art. 1, Indiana Constitution, §§65-71 Burns 1926, §13 reading as follows:

"In all criminal prosecutions, the accused shall have the right to a public trial by an impartial jury in the county in which the offense shall have

been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face; and to have compulsory process for obtaining witnesses in his favor."

Appellant has not pointed out any element of due process of law guaranteed by the Constitution which has been eliminated by the act of 1929, and it is clear that such objection is groundless and unavailing.

The act "makes it mandatory for the accused to be sentenced to death" only in case he is lawfully found guilty of murder in the first degree as defined by that portion of the statute quoted above. In this respect, the statute is not different from any law that fixes a definite determinate sentence.

Appellant assumes in (b) above that the court or jury has some discretionary right guaranteed by the Constitution with reference to the amount of punishment to be inflicted, and he assumes in (c) above that, because the jury has "the right to determine the law and the facts" under §19, Art. 1, Constitution, §71 Burns 1926, the jury has the right to fix and impose the judgment upon a defendant for the crime of which, by its verdict, it finds him to be guilty. It is manifest that the determination of the punishment to be inflicted for crime is a legislative function, and that it is only where the Legislature has provided for maximum and/or minimum limits of punishment to be determined by the courts that the judicial department (or administrative department in the case of indeterminate sentences) has discretion as to the amount of punishment to be administered. The function of the jury is to render a verdict; the judgment is imposed by the court. The jury, which, in arriving at its verdict, has "the right to determine the law and the facts," has no vested right under the Constitution to fix the pun-

ishment, nor does it have that right in any case except when it is specially conferred by the Legislature. One on trial has no "constitutional right to have the quantity of punishment fixed by a jury," and "because the jury are not allowed to fix the amount of punishment to be inflicted," does not deprive the accused of a jury trial in violation of §13, Art. 1, Indiana Constitution, §65 Burns 1926. *Miller* v. *State* (1898), 149 Ind. 607, 49 N. E. 894. Appellant contends (d) that §§4, 5, 6, ch. 53, Acts 1929, §§2412, 2341.1, 2341.2 Burns Supp. 1929, deny the jury its right under the Constitution "to differentiate between the lesser and greater degrees of the offense." Such right is not guaranteed by the Constitution, but is provided by statute, §2312 Burns 1926, which reads as follows:

> "Upon an indictment or affidavit for an offense consisting of different degrees, the jury may find the defendant not guilty of the degrees charged in the indictment or affidavit, and guilty of any degree inferior thereto or of an attempt to commit the offense."

We need not decide what the effect of §§5 and 6 of the 1929 act has upon §2312 Burns 1926, so far as the crime of first degree murder as defined by the first sentence (the first clause down to the proviso) of §2412 Burns 1929, is concerned, since that crime is not involved here.

The crime of first degree murder, as defined by the second sentence (the proviso) of §2412, is:

> "Whoever, . . . in the perpetration of or attempt to perpetrate a rape, arson, robbery or burglary, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death."

Premeditation or deliberation (which distinguishes first degree murder defined in the first sentence of §2412 Burns Supp. 1929, from second degree murder defined

in §2415 Burns 1926), is not an element of this crime, *Cole* v. *State* (1922), 192 Ind. 29, 134 N. E. 867, neither is malice nor intent to kill necessary elements of the crime, *Cole* v. *State, supra; McCutcheon* v. *State, supra:* When the facts prove the allegations of an indictment which charges the crime defined by the second sentence of §2412, *supra,* they prove first degree murder, and where, as here, there is no evidence adduced which proves anything but murder in the perpetration of a robbery, the court is not required to instruct the jury on second degree murder or manslaughter, *McCutcheon* v. *State, supra; Cole* v. *State, supra.* This appellant did not ask, nor did the court give, any instruction on second degree murder or manslaughter. In *Cole* v. *State, supra,* the court, before the passage of §§5 and 6 of the 1929 act, said: "A jury might have power to stultify itself by returning a verdict contrary to what it knew to be the law. . . . But the court, when giving instructions, is not required to insult the jurors by a suggestion that they may do so." See *State* v. *Roselli* (1921), 109 Kans. 33, 198 Pac. 195.

One of the reasons assigned in appellant's motion for a new trial was the alleged misconduct of a trial juror, Verner Blachly. Affidavits of Rena McNezzer, N. L. McNezzer and Dimple Johnson were filed in support of the motion, which allege that such juror, before the close of the evidence and trial, while standing in the courthouse "had the following conversation with Aurthur Blachly and Fred Marquardt, to wit: he was asked by said Aurthur Blachly what he thought about the case, he replied that he did not see any chances for the defendant as the defendant had not proven his innocence and I think he is guilty all right, I looked at him a good while on the witness stand, he's a bad egg." The affidavits did not state that the affiants had heard the alleged conversation, but we shall assume

them to be sufficient to present a question to the trial court. The State filed the counter affidavits of Verner Blachly, Aurthur Blachly and Fred Marquardt, in which they each denied that any such conversation ever took place. The court on the hearing on the motion for a new trial not only considered these affidavits, but, on its own motion, subpoenaed Verner Blachly into court to testify relative to said alleged misconduct, and examined him at length. He testified that he had had no such conversation as alleged in the affidavits of McNezzer, *et al.* The decision of the trial court on the issue of fact regarding the alleged misconduct was supported by sufficient evidence and this court cannot undertake to weigh the evidence contained in the conflicting affidavits. *Kleihege* v. *State* (1931), Ind. 177 N. E. (Ind.) 60; *Reyman* v. *State* (1926), 197 Ind. 685, 150 N. E. 409; *Keyes* v. *State* (1889), 122 Ind. 527, 532, 22 N. E. 1097.

The appellant contends that: "The trial court committed reversible error in permitting, over the objections of the defendant, the alleged confessions to go to the jury, without first giving the accused a chance to show under what circumstances said alleged confessions were given and that the same were involuntary; that evidence herein conclusively established the fact that the alleged confessions herein were obtained from the defendant by threats, coercion, intimidations, assaults and the brutalities of the officers who arrested him and while in their custody," etc. "No person arrested, or confined in jail, shall be treated with unnecessary rigor," §15, Art. 1, Constitution, §67 Burns 1926. *Hall* v. *State* (1928), 199 Ind. 592, 600, 159 N. E. 420. The securing of voluntary confessions from guilty criminals is to be desired, and the reasonable examination of prisoners charged with or suspected of crime is and should be allowed in the interest of public

welfare and safety, but such examinations should be kept within proper bounds. The law protects persons charged with crime from ill or unjust treatment, and cruel and brutal methods should never be tolerated. *Bonahoon* v. *State* (1931), 203 Ind. 51, 178 N. E. 570. It is unlawful for police officers in charge of a person under arrest charged with the commission of a crime to inflict or threaten to inflict upon him any physical violence or injury, or deprive him of necessary food or sleep for the purpose of extorting a confession from him, §1, ch. 4, Acts 1911, §2420 Burns 1926, and confessions obtained by police officers through fear, physical force or violence are useless because they are not admissible in evidence. *Bonahoon* v. *State, supra.*

Section 239, ch. 169, Acts 1905, §2271 Burns 1926, provides:

> "The confession of a defendant made under inducement, with all the circumstances, may be given in evidence against him, except when made under the influence of fear produced by threats or by intimidation or undue influence; but a confession made under inducement is not sufficient to warrant a conviction without corroborating evidence."

Confessions and admissions made voluntarily, or under inducements other than fear produced by physical violence, threats, intimidation or undue influence are admissible in evidence. *State* v. *Freeman* (1859), 12 Ind. 100; *Harding* v. *State* (1876), 54 Ind. 359; *Snyder* v. *State* (1877), 59 Ind. 105; *Walker* v. *State* (1893), 136 Ind. 663, 36 N. E. 356.

If the admission of a confession in evidence is objected to by a defendant, the question of whether or not it is competent is one for the court to determine. In the absence of the jury, the court should hear evidence as to the circumstances under which the confession was made, and the burden of proving the confession incompetent is upon the defend-

ant.  *Brown* v. *State* (1880), 71 Ind. 470; *Palmer* v.
*State* (1893), 136 Ind. 393, 36 N. E. 130; *Hauk* v.
*State* (1897), 148 Ind. 238, 46 N. E. 127, 47 N. E. 465.
In *Hauk* v. *State, supra,* at pp. 258, 259, this court held
that the question of the exclusion of a confession as in-
competent evidence for the alleged reason that it was
made through fear produced by threats became a pre-
liminary one to be determined by the court and that
the appellant was not entitled by instructions requested
by him to have the question of its competency submitted
to the jury for its decision.  But, after the court has
determined that a confession is competent and admis-
sible and it is introduced in evidence, the defendant has
the right to present to the jury evidence as to the con-
ditions under which it was obtained, evidence that he
did not make the confession, or evidence which tends
to contradict, discredit or lessen the weight thereof.  16
C. J. 737.  A confession is evidence to be considered by
the jury in determining the guilt of the accused, and
such evidence may be rebutted the same as other evi-
dence.  *Jaynes* v. *People* (1908), 44 Colo. 535, 99 Pac.
325, 16 Ann. Cas. 787.

The appellant's rights in respect to the admission in
evidence of his confession were fully protected and not
infringed upon.  The court, in the absence of the
jury, heard at great length the evidence on the
question of the admissibility of the confession.
The appellant testified that threats were made to him
by the police officers and that officer Bolden at 2 a. m.
said, "If you don't tell the truth . . . about this axe,
I am going to beat your head"; that he was struck on
the head with a blackjack and a rubber hose, on the
nose by Bolden's fist, across the mouth, and that his
tooth was knocked out.  That his meals at the jail were
irregular, and small quantities of poor food were served
to him, and that, in the presence of officers and news-

paper men, Captain Vodicka, the chief of police, at the point of a gun, forced him to sign the confession. The police officers, accused by the appellant's testimony, testified and denied that any such treatment was accorded him. Officer Clifford testified that the defendant was threatened with force only once, when he appeared to be on the verge of breaking away from the police officers. The chief of police testified that he did not strike or threaten the defendant, nor did anyone else in his presence, and that he was with the defendant practically all the time and that appellant made his mark on the confession of his own free will. The chief of police also testified that he offered food to the defendant, who refused it, and that he advised defendant of his constitutional rights relative to giving evidence against himself. A physician testified that he examined the defendant thoroughly all over about twelve hours after the confession was made and that he found no cuts, bruises, abrasions, scratches, fresh scars, wounds or swellings that had been inflicted during the time the defendant was in jail. The evidence was ample to sustain the trial court's determination that the confession was admissible in evidence. This court will not weigh the evidence given in the trial court upon the competency of the admission in evidence of a written confession made by a defendant. *Keyes* v. *State, supra; Smith* v. *State* (1895), 142 Ind. 288, 41 N. E. 595; *Hauk* v. *State, supra.*

After the confession was admitted in evidence, the appellant again testified before the jury that he was mistreated by the police officers, which testimony was controverted by the witnesses for the State.

In oral argument, the attorneys for appellant sought to make the point that the confession, in order to be admissible, must be admissible as a whole. This contention is erroneous, but, where a confession is introduced by the State, the accused has the

right, if he desires, to require that the whole of the statement or conversation containing it shall go to the jury. 16 C. J. 723. An examination of the record shows that only about one-third of the confession, as made by appellant, was introduced and read to the jury. The other two-thirds, which the State did not seek to introduce in this case, had to do with other crimes (See footnote 1). Appellant's attorneys, after making their objection to the introduction of the part of the confession offered by the State, also stated that their "objection was based against the introduction of the pieces instead of the entire instrument," but, when asked by the court, "Are you objecting because I am only admitting a part?" said, "No, the objection was as to what was offered." The court stated that he would let it all go in if they were objecting on that ground, but they stated that they did not want it all to go in.

Appellant contends that the trial court erred in refusing to give instruction No. 1 tendered by the defendant, which reads as follows:

"The court instructs you gentlemen of the jury, that it is the law in the State of Indiana that a defendant placed upon trial in any criminal action is supposed to be innocent until such a time as the evidence in the case has shown him to be guilty beyond a reasonable doubt, and if you find from all the evidence introduced at the trial from the witnesses, whether they testify for the State or the defendant, that a doubt exists in your minds of the defendant's guilt, then, it is your duty as a jury to vote an acquittal of the defendant."

But the court of its own motion gave instructions Nos. 6 and 7, which read as follows:

"The defendant is presumed to be innocent until his guilt is established by such evidence as will exclude every reasonable doubt. Therefore, the law requires that no man shall be convicted of a crime until each and all of the jurors are satisfied from the evidence in the case, to the exclusion of every

reasonable doubt, that the defendant is guilty. So in this case, if any juror or jurors after having duly considered all of the evidence and after having consulted with his or their fellow jurymen, should entertain such reasonable doubt as to the defendant's guilt, the jury cannot in that case find the defendant guilty.

"There is no duty resting on the defendant to prove or otherwise establish his innocence. The burden of proving the defendant guilty of the offense charged, beyond a reasonable doubt is upon the State. Before there can be a conviction of the defendant, the State must prove all the material elements of the alleged offense. If from the evidence introduced, or from a lack of evidence, you entertain a reasonable doubt as to whether or not the defendant committed said offense, you should acquit the defendant."

All of the material elements contained in defendant's tendered instruction No. 1 were contained in instructions Nos. 6 and 7 given by the court, and the refusal to give said instruction No. 1 was, therefore, not error. *Bohan* v. *State* (1923), 194 Ind. 227, 141 N. E. 323; *Greer* v. *State* (1929), 201 Ind. 434, 168 N. E. 458; *Headlee* v. *State* (1930), 201 Ind. 545, 168 N. E. 692, 170 N. E. 433.

The appellant in his motion for a new trial alleged misconduct on the part of the prosecuting attorney, and, in support of the motion, filed the affidavits of Rena McNezzer, N. L. McNezzer and Dimple Johnson (hereinbefore referred to), which allege that the prosecuting attorney, in addressing the jury, used the following language:

"I would not ask you to send this defendant to the electric chair on the testimony of Harry Boyd (the owner of the barbecue stand) for he is just another ignorant sort of nigger.

"If you want to keep lynching out of this country you will have to send this defendant to the electric chair.

"This defendant is a criminal and has served a term in the Indiana Reformatory, went to school down there and learned all about the third degree, learned to testify that he was beat up the police. You will have to do your duty by ignoring his testimony, if you are to be swayed by such testimony there will sure be a lynching around Gary."

The record does not show that any objection to remarks by the prosecuting attorney in argument was made at the time of the argument, that the court was requested to admonish or instruct the jury concerning any remarks made by the prosecuting attorney or that any motion was made asking that the submission of the cause be set aside. The State, by the prosecuting attorney, filed a counter affidavit wherein it is denied that the statements quoted above were made in argument to the jury. The question as to misconduct of the prosecuting attorney was not in any manner legally raised, but if it was considered and decided adversely to the appellant by the trial court, which weighed the evidence presented by the conflicting affidavits, such decision cannot here be reviewed—the allegations of the prosecuting attorney's affidavit being sufficient to sustain the finding of the trial court, *Reyman* v. *State, supra; Keyes* v. *State, supra.*

Appellant says: "That trial court committed reversible error, as a matter of law, in permitting Claude W. Allman, a member of the grand jury which voted the indictment against the defendant herein, to appear and testify as a witness in chief on behalf of the State and against this defendant, over the objection of his counsel." Allman's testimony covers eight pages of the record, and an examination of it shows that the defendant did not make a single objection during the entire examination. The facts which Allman testified to were not with reference to anything which took place in the grand-jury room or any part of the grand-

jury proceedings, but related to declarations made by the defendant in Allman's presence as an individual. Had appellant made objection to the testimony, it would have been properly overruled.

Appellant alleges that the court erred in refusing to exclude six persons named when they, as prospective jurors, were challenged for cause. He does not state what the ground of challenge was in any instance and the record does not show that any of the six named were challenged for cause or that any grounds were stated or objections made at the trial why said jurors should be discharged for cause. No question is presented by this improper assignment.

The trial court did not err in overruling the appellant's verified application, filed October 21, 1929, for a second continuance on the alleged ground that material witnesses were absent. The application states that Frank Klamek and Mary G. Pida of Milwaukee, Wisconsin, would testify, if present, that defendant did not murder one Mary Gigl (Mary Gigl was the daughter of Mary G. Pida who proposed to testify that Mary stated before her death that "Frank" killed her). In this prosecution, the defendant was charged with murdering Josephine Odorizzi, not Mary Gigl.[1] Applications for a continuance are addressed to the sound discretion of the court, *Wassels* v. *State* (1866), 26 Ind.

---

Note 1. The confession of appellant contained admissions that he and Frank on February 17, 1929, held up and robbed a man; on March 5, 1929, held up, robbed and raped a woman; on March 12, 1929, held up and robbed a man; on March 13, 1929, held up and robbed a man; on March 13, 1929, held up and robbed a young man and woman (tearing all the clothing off the lower part of her body and other facts indicating rape); on March 15, 1929, held up and robbed several people in a house; on March 16, 1929, held up a man. In each of these cases, the victims were hit over the head with a club, gas pipe or axe, and were left unconscious, without knowledge on Mack's part as to whether they were dead or alive. (Two of the victims died.) The portions of the confession containing the foregoing admissions were not admitted in evidence in this prosecution.

30; *Connors* v. *State* (1915), 183 Ind. 618, 109 N. E. 757, and it is not error for a trial court to refuse an application for a continuance where the evidence sought is not shown to be material to the case being tried, *Smith* v. *State* (1892), 132 Ind. 145, 31 N. E. 807; *Hubbard* v. *State* (1855), 7 Ind. 160.

Appellant's last attempt to present an error is as follows: "The trial court committed reversible error and abuse of discretion in making improper statements in the presence of the jury, prejudicial to the rights of the defendant, which found their way to and in the daily press and [were] read by the trial jury." The matter referred to which is set out as an exhibit to the motion for a new trial is a clipping from a Gary newspaper which stated that the trial judge "at noon recess today . . . instructed the . . . sheriff . . . to personally guard the 'death ax' and to keep it out of the alleged slayer's reach at all times." There is no showing whatever that the statement of the judge was made in the presence of the jury or that any member of the jury read the newspaper. No objection was made at the time by the defendant, and we see nothing improper in such a statement or instruction by a court, particularly if given in the absence of the jury.

In order that appellant may have ample time to file a petition for a rehearing, if he so desires, and the court may have time to consider the same, the execution of the death sentence is postponed from April 29, 1932, to July 1, 1932, and the clerk is directed to notify the warden of the Indiana State Prison of such action.

Judgment affirmed.