BARKER *v*. STATE OF INDIANA.

[No. 29,554.   Filed May 22, 1958.]

*William H. Sparrenberger,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Merl M. Wall,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The appellant was charged under Burns' §10-3401 with murder in the first degree by stabbing one Robert Poland with a knife on the 25th day of August, 1956. He was tried by jury and found guilty as charged and sentenced to the Indiana State Prison for life. He appeals from this conviction. The motion for a new trial sets forth all the claimed errors, only four of which are given treatment in the argument section of appellant's brief.

The first point urged is that on the *voir dire* examination of the jury the trial judge stated to a prospective juror that under the first degree murder charge, the defendant could be found guilty of any included offense such as manslaughter, murder in the second degree and assault and battery with intent to kill, plain assault and battery or simple assault. The State objected to this remark and the court later stated: ". . . I shall so instruct the jury when the time comes, is second degree murder and manslaughter, as being the only included offenses." The court later instructed the jury that second degree murder and manslaughter were the lesser offense covered by the indictment.

The appellant, citing the case of *Sullivan* v. *State* (1957), 236 Ind. 446, 139 N. E. 2d 893, contends very strenuously that the trial court was duty bound under the charge of murder to instruct the jury it could find the defendant guilty of any lesser included offense including assault and battery.

A consideration of *Sullivan* v. *State, supra,* shows that that case pertains solely to a charge of manslaughter. The decision in that case holding in charges of manslaughter a defendant may be found guilty of any lesser included offense, is based upon the two Sections, 9-1816 and 9-1817, Burns' 1956 Replacement. Section 9-1816 reads as follows:

> "Upon an indictment or affidavit for an offense consisting of different degrees, the jury may find the defendant not guilty of the degrees charged in the indictment or affidavit, and guilty of any degree inferior thereto or of an attempt to commit the offense."

The next section of this 1905 Act (Burns' §9-1817) reads as follows:

> "In all other cases, the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment or affidavit."

The statute (Burns' §10-3405) defining manslaughter, fixed no degrees of that offense. Therefore, under a count stating manslaughter, a defendant may be found guilty of a lesser offense included therein, as stated in *Sullivan* v. *State, supra.* However, in a case such as we have before us, in which the charge is first degree murder, the offense is stated in different degrees and the application of the statute is not the same as in the case where manslaughter is charged in a separate count. These sections of the 1905 Act with somewhat similar legislation (since repealed) have caused some confusion in the understanding of the earlier decisions of this court. *Witt* v. *State of Indiana* (1933), 205 Ind. 499, 185 N. E. 645; *Mack* v. *State* (1932), 203 Ind. 355, 180 N. E. 279, 83 A. L. R. 1349.

The decisions must be read in the light of the statute applicable at the time.

Under an indictment charging a crime which has different degrees fixed by statute, a defendant may not be found guilty of any lesser included offense (other than a degree) unless such lesser included offense is stated in a separate count in the indictment or affidavit.

Our attention is directed to the case of *Romeo* v. *State* (1930), 203 Ind. 116, 173 N. E. 324, which holds that one may be found guilty of manslaughter under the sole charge of murder in the first degree. We have examined this case and find that it holds that "on the trial of an indictment for murder there may be a conviction for voluntary or involuntary manslaughter." The case sets out the two sections of Burns' §§9-1816 and 9-1817, set forth above, but without any analysis of the wording thereof. It holds in substance that manslaughter is a different degree of the crime of homicide. The case is based upon the common law as revealed by decisions prior to the enactment (1905) of the above quoted statutes, Burns' §§9-1816 and 9-1817. Prior to 1905 it was a well settled principle of the common law in this state that manslaughter was a lesser offense included in murder or homicide. *Hasenfuss* v. *State* (1901), 156 Ind. 246, 251, 59 N. E. 463; *Carrick* v. *State* (1862), 18 Ind. 409; *Powers* v. *State* (1882), 87 Ind. 144; *Pigg* v. *State* (1896), 145 Ind. 560, 43 N. E. 309; *Moon* v. *State* (1852), 3 Ind. 438; *Dukes* v. *State* (1858), 11 Ind. 557, 71 Am. Dec. 370; *Reed* v. *State* (1894), 141 Ind. 116, 40 N. E. 525.

Likewise, in *Fausett* v. *State* (1941), 219 Ind. 500, 504, 39 N. E. 2d 728, this court reached the same result:

"It has been many times held by this court that a charge of murder in the first degree comprehends every grade of felonious homicide. The crime of first degree murder where, as here, the commission of the offense was by means of a shotgun, would naturally include the unlawful pointing of the gun at the victim. The charge of murder in the first degree would, therefore, comprehend the crime of involuntary manslaughter based on the unlawful pointing of a gun and a death resulting therefrom. This court has held that a finding of involuntary manslaughter cannot be disturbed on appeal because the evidence also furnished the basis for a finding that the defendant was guilty of murder. *Gipe* v. *State* (1905), 165 Ind. 433, 75 N. E. 881; *Hasenfuss* v. *State* (1901), 156 Ind. 246, 251, 59 N. E. 463.

"In the latter case this court said:
" 'Certainly our decisions may be said to settle the question beyond controversy, and correctly so, that, under the law of this State in all cases of criminal homicide, regardless of the means by which it is committed, the crime is graduated and must be one or the other of the three grades of homicide, namely, murder in the first or second degree, or manslaughter, and that it is in the province of the jury to determine under the evidence of which they will convict the accused.' "

It thus appears by a long line of judicial precedent in this state that under a charge of murder a defendant may be found guilty of manslaughter although the statute defining the offense does not specifically fix manslaughter as a degree of any offense of murder. Regardless of the questioned soundness of the original reasoning of the above cases in view of the statutes since 1905, the law is now so well settled that we should not upset such well established precedent. The change, if desirable, must come from the legislature.

We point out however that Burns' §9-1817 applies only to the offense which is "charged in the indictment or affidavit." It follows that unless manslaughter is specifically and separately charged in a count in an indictment, a defendant charged with murder may be convicted only of one of the degrees of murder, manslaughter or an attempt to commit the crimes and may not be found guilty of any other offense under Burns' §§9-1816 and 9-1817. The trial court committed no error in this case when it instructed the jury that under a charge of first degree murder the jury could properly consider the charge of murder in the second degree and manslaughter.

The appellant tendered no instruction upon lesser included offenses, yet insists that the court erred by failing to instruct the jury under Burns' §9-1805, which states in part:

"In charging the jury the court must state to them all matters of law which are necessary for their information in giving their verdict."

The above portion of the statute does not relieve a party from submitting desired instructions, if the court, through oversight or otherwise, fails to instruct as fully as a party desired. Counsel, knowing the court is omitting the instruction upon some point in the case, may not remain quiet and tender no instruction and afterwards claim the court erred. Such practice would be wrong and mischievous. The case of *Sullivan* v. *State* (1957), *supra*, is to be construed in the light of such a principle. In that case, although the appellant objected to the court's failure to submit forms of verdict, including lesser offenses, she also tendered an instruction upon the same principle, which was also refused. The appellant saved the

error by proper and timely objections made to instructions both given and refused. That is not the case here, since the appellant made no request for any instructions on lesser included offenses and made no objections to any instructions given on that point, so far as our attention has been directed by appellant's presentation of this case. *Bowman* v. *State* (1954), 207 Ind. 358, 192 N. E. 755, 96 A. L. R. 522; *Mack* v. *State* (1932), 203 Ind. 355, 180 N. E. 279, 83 A. L. R. 1349.

The second error assigned is that a juror during a trial intermission violated the admonition of the court in making an inquiry of a third party, asking "If a man were found guilty, could the judge send him to a mental institution in a case like a murder case?" The answer was "It is my understanding that the defense of insanity has to be specially raised by the defense attorney and evidence of insanity introduced before the court or jury can do this." No doubt this is a violation of the court's admonition to the juror. A juror during the time of his active service should, so far as possible, avoid opportunities which would bring him into contacts where the pending litigation might be discussed. The situation here, however, differs but very little from those cases in which jurors have had in their possession during the trial certain law books. Such irregularities are to be condemned, yet we may not reverse a case unless the defendant's interests have been thereby prejudiced. The appellant has not shown that the conversation or question had anything to do with any issue in the case. We must conclude that the defendant was not prejudiced or harmed thereby. *Posey, Michael* v. *State* (1956), 234 Ind. 696, 131 N. E. 2d 145; *Deig* v. *State* (1928), 200 Ind. 125, 160 N. E. 673; *Hatton* v. *State* (1925), 195 Ind. 618, 146 N. E. 577.

Another error urged by the appellant is that the court sustained an objection of the state to the following question asked witness David Stewart on cross-examination by the appellant:

"Q. But I mean using it to protect himself—that's the only time he had it?"

This question appears on its face to be double in meaning. The witness would have to accept the assumption that the party referred to was using the weapon to protect himself in order to answer the question "yes" or "no." The question was improperly framed. The character and limits of cross-examination rest within the sound discretion of the court. There is no showing of error or abuse of this discretion prejudicial to the defendant. The trial court acted within its proper sphere in sustaining the objection to the question as framed. *Sullivan* v. *State* (1927), 200 Ind. 43, 161 N. E. 265; *Foust* v. *State* (1927), 200 Ind. 76, 161 N. E. 371; *Henry* v. *State* (1924), 196 Ind. 14, 146 N. E. 822; *Shields* v. *State* (1897), 149 Ind. 395, 49 N. E. 351.

The final objection made is that the verdict is not sustained by sufficient evidence and the argument on this issue is centered primarily upon the contention that there is no evidence of premeditation or time for deliberation after the intent to kill was formed. Although there are some statements by authorities to the effect that the premeditation may be practically simultaneous with the act of killing, it is difficult to conceive of such a possibility. *Heglin* v. *State* (1957), 236 Ind. 350, 140 N. E. 2d 98; *May* v. *State* (1953), 232 Ind. 523, 112 N. E. 2d 439; *Binns* v. *State* (1879), 66 Ind. 428.

Under the offense charged in this case it was necessary to prove that the appellant killed "with premedi-

tated" malice. In other words, the proof must show the defendant had time to deliberate upon the intent and design to take life. We have said before: "Premeditation by its very nature is not instantaneous but requires some time interval." *Heglin* v. *State* (1957), 236 Ind. 350, 140 N. E. 2d 98.

Examining the evidence it shows that there was a sufficient time interval here for the defendant to consider the consequences of his act. The evidence shows that prior to the stabbing the appellant flourished a long knife among his companions, threatening some of them, and just prior to the killing said to the deceased during an altercation "I'll cut hell out of you." The deceased had no weapon whatever. Malice is shown by the use of a deadly weapon. *May* v. *State* (1953), 232 Ind. 523, 112 N. E. 2d 439; *Bridgewater* v. *State* (1899), 153 Ind. 560, 55 N. E. 737.

The judgment is affirmed.

Emmert, C. J., Landis and Achor, JJ., concur.

Bobbitt, J., concurs in the affirmance of the judgment.

NOTE.—Reported in 150 N. E. 2d 680.