VAN DER WEYDE *v.* OCEAN TRANSPORT CO., LTD. ET AL.

No. 4. Submitted January 15, 1936.—Decided February 3, 1936.

*Messrs. John P. Hannon, Wm. P. Lord,* and *Andrew G. Haley* submitted for petitioner.

*Messrs. Lane Summers, F. T. Merritt,* and *W. H. Hayden* submitted for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Petitioner brought this libel in 1931, in the District Court for the Western District of Washington, against the vessel "Taigen Maru," for personal injuries which he sustained as a seaman in 1922. The vessel was then known as the "Luise Nielsen" and was of Norwegian registry. The respondent, Ocean Transport Company, Ltd., a Japanese corporation, made claim as owner, and filed exceptions alleging that a final decree had been entered in the District Court for the District of Oregon in 1924 dismissing a libel, for the same cause, on the intervention of the Norwegian consul.

In the present case, there was again an intervention by the Norwegian consul, who claimed that, while the vessel was now Japanese, he was nevertheless officially concerned, as the former Norwegian owner had agreed to deliver the vessel "free from all debts and encumbrances." The consul filed exceptive allegations to the effect that the libelant, a Dutch subject, had signed Norwegian articles and, so far as his rights as a seaman were concerned, was bound by the laws of Norway, which provided for appropriate remedies. The consul asked that, if the cause was not dismissed because of the former decree, the dispute should be left for his adjustment and disposition. The libelant made response and, on hearing, the District Court dismissed the cause "in the exercise of its discretion."

The Circuit Court of Appeals affirmed the decree, but upon the ground that the dismissal should have been for want of jurisdiction rather than as an exercise of discretion. 73 F. (2d) 922. The court based its decision upon the second paragraph of Article XIII of the Treaty of Commerce and Navigation, of 1827, between the United States and the Kingdom of Sweden and Norway, the text

of which is given in the margin.[1]   The court assumed
that this provision was still in effect, apparently not
being advised of the fact that Articles XIII and XIV of
that treaty had been terminated in 1919.   See Foreign
Relations of the United States, 1919, pp. 47–54.

Section 16 of the Seamen's Act of March 4, 1915,[2]
expressed "the judgment of Congress" that treaty provi-
sions in conflict with the provisions of the Act "ought
to be terminated," and the President was "requested
and directed" to give notice to that effect to the several
Governments concerned within ninety days after the
passage of the Act.   It appears that, in consequence, no-
tice was given and that a large number of treaties were ter-
minated in whole or in part.[3]   The Treaty with Sweden
and Norway of 1827 provided that it might be termi-
nated, after an initial period of ten years, upon one year's
notice.[4]   On February 2, 1918, the Government gave
notice to the Norwegian Government of the denuncia-
tion of the treaty in its entirety, to take effect on Feb-
ruary 2, 1919, but later by an exchange of diplomatic

[1] 8 Stat. 346, 352. "Article XIII. . . . The consuls, vice consuls,
or commercial agents, or the persons duly authorized to supply their
places, shall have the right, as such, to sit as judges and arbitrators
in such differences as may arise between the captains and crews
of the vessels belonging to the nation whose interests are com-
mitted to their charge, without the interference of the local authori-
ties, unless the conduct of the crews, or of the captain, should disturb
the order of tranquillity of the country; or the said consuls, vice
consuls, or commercial agents should require their assistance to cause
their decisions to be carried into effect or supported. It is, however,
understood, that this species of judgment, or arbitration shall not
deprive the contending parties of the right they have to resort, on
their return, to the judicial authority of their country."

[2] 38 Stat. 1164, 1184.

[3] Foreign Relations of the United States, 1915, pp. 3 et seq.; 1916,
pp. 33 et seq.; 1917, pp. 9 et seq.; 1918, pp. 3 et seq.; 1919, pp.
47 et seq.

[4] Article XIX, 8 Stat. 356.

notes, this Government formally withdrew its denunciation, except as to Articles XIII and XIV. Foreign Relations of the United States, 1919, pp. 50–52. It was expressly stated that Articles XIII and XIV of the treaty, being in conflict with provisions of the Seamen's Act, were deemed to be terminated on July 1, 1916, so far as the laws of the United States were concerned. *Id.* pp. 53, 54.

On June 5, 1928, the two Governments signed a Treaty of Friendship, Commerce, and Consular Rights, and on February 25, 1929, an additional Article, which supplanted the Treaty of 1827 (so far as the latter had remained effective), save that Article I of the former treaty concerning the entry and residence of the nationals of the one country in the territories of the other for the purposes of trade, was continued in force.[5]

Respondent contends (1) that the Seamen's Act did not specifically direct the abrogation of Article XIII, (2) that the Act was not so unavoidably inconsistent with all the provisions of Article XIII as to require its entire abrogation, and (3) that the diplomatic negotiations attempting to effect abrogation of the whole of Article XIII "were in excess of congressional direction and in violation of constitutional authority."

The first and second points are unavailing, if Article XIII was actually abrogated in its entirety, and that this was the purport of the diplomatic exchanges between the two Governments is beyond dispute. As to the third point, we think that the question as to the authority of the Executive in the absence of congressional action, or of action by the treaty-making power, to denounce a treaty of the United States, is not here involved. In this instance, the Congress requested and directed the President to give notice of the termination of the treaty provi-

[5] 47 Stat. Pt. 2, pp. 2135, 2158, 2159.

sions in conflict with the Act. From every point of view, it was incumbent upon the President, charged with the conduct of negotiations with foreign governments and also with the duty to take care that the laws of the United States are faithfully executed, to reach a conclusion as to the inconsistency between the provisions of the treaty and the provisions of the new law. It is not possible to say that his conclusion as to Articles XIII and XIV was arbitrary or inadmissible. Having determined that their termination was necessary, the President through the Secretary of State took appropriate steps to effect it. Norway agreed to the termination of Articles XIII and XIV and her consul cannot be heard to question it.

The injuries, of which libelant complains, took place after that termination. The effect of the new treaty we need not, and do not, consider, as in any event it could not be regarded as retroactively affecting the jurisdiction of the District Court.

The Circuit Court of Appeals fell into error in sustaining the dismissal of the cause upon the ground of want of jurisdiction by reason of the treaty provision invoked. We express no opinion upon any other questions which the cause may present, as these have not been considered by the courts below. They should be considered and determined.

The decree is reversed and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed.*