**PLEASANT HOPE BANK v. GALT (two cases).**

**Nos. 11275, 11317.**

Circuit Court of Appeals, Eighth Circuit.

July 6, 1939.

Rehearing Denied Aug. 8, 1939.

Frank B. Williams, of Springfield, Mo., for appellant.

W. D. Tatlow, of Springfield, Mo., for appellee.

Before GARDNER and WOODROUGH, Circuit Judges, and OTIS, District Judge.

WOODROUGH, Circuit Judge.

The Pleasant Hope Bank appeals from a summary order of the bankruptcy court commanding the bank to turn over a certain note and a certain sum of money which the bank had taken into its possession. The summary jurisdiction is in question.

It appears that in 1926 the bankrupt and his wife became indebted to the bank in the sum of $1,922, evidenced by their promissory notes. The bankrupt was the owner as tenant in common with his brother of a 259 acre farm worth $3,500 over and above the encumbrance thereon. He and his wife also owned by the entireties two town lots with dwelling house in the town of Pleasant Hope, Missouri, worth $1,150, in addition to their homestead. They had no debts except those to the Pleasant Hope Bank and an unsecured debt of $325 to another local bank.

On April 3, 1933, the bankrupt and his wife conveyed their property to their son. The Pleasant Hope Bank thereupon sued out an attachment against the property comformably to the practice in Missouri, and attacked the conveyances as fraudulent.

After hearing had been had, the court set the conveyances aside, but the attachment suit remained pending, the attachment lien of the bank being duly recorded as required by statute. On August 15, 1933, the bankrupt again conveyed the property, this time to his brother Edgar. A proposed settlement of the claims of the bank failed, and the debtor filed voluntary petition in bankruptcy. The town lots with dwelling were listed in the bankruptcy schedule as the property of the bankrupt.

The Pleasant Hope Bank filed its claim in the bankruptcy for $1,922 as a secured claim, the security being the lien preserved by the pending attachment suit. It also filed claim for $192 as a general unsecured creditor.

After adjudication the bankrupt petitioned the bankruptcy court "to dismiss" the attachment suit pending in the state court and contended through his attorney that the bankruptcy abated the state court proceedings. Mr. M. H. Galt had been elected trustee in bankruptcy and he opposed the bankrupt's petition. It was denied. In this matter as in the others, the trustee, Mr. Galt, was represented by Mr. Pufahl, who was attorney for both of the creditor banks. Mr. Pufahl presented to Mr. Galt a plan of action suggested by the Pleasant Hope Bank as the most effective and economical method of realizing upon the bankruptcy assets. The proposal was that the bank should prosecute its attachment action to final decree and sale of the property for the benefit of the estate and share in the proceeds as a general creditor in the bankruptcy. The trustee accepted, and a contract embodying the agreement was accordingly entered into between the trustee and the bank. The contract follows:

"In Re: Ambrose C. Smith, a Bankrupt.

"Whereas, the Pleasant Hope Bank, on the 11th day of April, 1933, instituted a suit in the circuit court of Polk County, Mo., by attachment against Ambrose C. Smith and his wife Savannah G. Smith, on a promissory note given by them to the Pleasant Hope Bank.

"And Whereas, the said Ambrose C. Smith thereafter filed a voluntary petition in bankruptcy and was adjudicated a bankrupt, in Dec. 1933, and Matthew Galt has been elected trustee in said estate,

"And Whereas, the said Ambrose C. Smith and his wife Savannah G. Smith on the 15th day of August, 1933, executed a deed in which they conveyed to Edgar L. Smith and his wife, certain property located in Polk County, Mo., being the same property which had been attached by the Pleasant Hope Bank.

"Now, it is hereby agreed by and between the Pleasant Hope Bank and the said Matthew Galt, Trustee, that the said bank will prosecute said action for the benefit of the bankrupt estate, and any recovery in said case shall inure to the benefit of said estate and any proceeds realized from the sale of said premises in said attachment proceedings, shall be turned over to the trustee in bankruptcy, who shall handle and distribute them to said bank as a general creditor and to the other general creditors of said estate who have filed claims and who have had them allowed by the Referee in Bankruptcy.

"In Witness Whereof, the said parties have hereto set their hands.

"The Pleasant Hope Bank,
"By M. T. Prater, Pres.
"M. H. Galt,
"Trustee, Ambrose C. Smith, Bankrupt."

After the contract had been made, the Bank, instead of prosecuting its suit to final judgment, entered into a settlement agreement with the bankrupt, his wife, and the fraudulent transferees. A third party was found who purchased the town property at its value of $1,150 and paid this amount to the bank, taking title from the bankrupt and his wife; the bankrupt and his wife took legal title to the 259 acre farm tract (subject to pre-existing encumbrance) and covenanted not to further encumber the land; the bankrupt gave the bank three notes, two for $500 each and one for $682, and the bank agreed to and did dismiss its attachment suit, accepting the consideration in discharge of its total debt which then had amounted, with interest, to approximately the amounts received by it.

Though requested, the bank refused to turn over to the trustee in bankruptcy any part of the proceeds realized by it out of the settlement of the attachment suit and the trustee accordingly applied for summary order against the bank to turn all such proceeds over to the trustee. On the hearing the bank attacked the summary jurisdiction of the bankruptcy court, claiming that it held the proceeds of the settlement which were in its hands under adverse claim of title. It alleged that the bankrupt had paid the two $500 notes out of proceeds of his earnings subsequent to bankruptcy, and that the contract made with the trustee was unenforceable for lack of consideration. The referee overruled the contentions of the bank. He was of the opinion that the bank held its attachment suit as a chose in action in trust merely, and that when the chose in action was liquidated by the settlement there was an

executed trust as to the proceeds obtained. The bank submitted a motion for rehearing and presented that the town property, from the sale of which it had derived $1,150, was in fact property owned by the bankrupt and his wife by the entireties and not by the bankrupt himself, and that said property and the proceeds obtained therefrom were never a part of the bankruptcy estate. Armold v. Lang, D.C., 11 F.2d 630; Ashbaugh v. Ashbaugh, 273 Mo. 353, 201 S.W. 72; Stifel's Union Brewing Co. v. Saxy, 273 Mo. 159, 201 S.W. 67, L.R.A.1918C, 1009; Frost v. Frost, 200 Mo. 474, 98 S.W. 527, 118 Am.St.Rep. 689; Kerin v. Palumbo, 3 Cir., 60 F.2d 480; Phillips v. Krakower, 4 Cir., 46 F.2d 764; McMullen v. Zabawski, D.C., 283 F. 552; In re Berry, D.C., 247 F. 700. Denying the motion for rehearing, the referee filed his opinion as follows:

"If the order heretofore made in this case by the Referee were based solely on the assumption that the Pleasant Hope lots were assets of the bankrupt estate, then the defendant bank's discovery since the trial of this case that the Pleasant Hope lots were not the bankrupt's individual property but were owned by the bankrupt and his wife as tenants by the entirety would be fatal to the order made.

"The defendant bank's attachment suit to collect $1922 and accrued interest from November 1, 1931, levied upon the Pleasant Hope lots and levied upon the undivided one-half interest of the bankrupt in the 259-acre Polk County, Missouri, tract was an adverse claim when Smith became a bankrupt, and the bankrupt estate's interest therein, if any, was not reachable by a summary action. But the defendant bank by entering into a contract with M. H. Galt as trustee of the bankrupt estate, whereby it transferred to the bankrupt estate the beneficial interest in the defendant's chose in action for $1922 and accrued interest, and whereby it agreed that it would prosecute the claim for the benefit of the bankrupt estate, and that the proceeds thereof would inure to the benefit of said estate, wholly divested its claim of its adverse nature. The subject matter of the trust being a chose in action and intangible, the defendant bank invested the bankrupt estate with the possession of the subject matter of its attachment suit in the most effectual way possible by executing and delivering to the trustee of the bankrupt estate the written contract. The possession of the trustee is the possession of the beneficiary of the trust. And because the bankrupt estate, by virtue of the contract, was in equity the owner of the chose in action and in possession of it, so far as it was possible to have possession, the bankrupt estate's interest in the subject matter of the attachment suit is reachable in this summary proceeding, and the defendant owes the duty to account for the proceeds of the chose in action.

"The defendant's application for a recission or modification of the order is denied."

Upon review by the District Court the jurisdiction of the referee was sustained and the turn over order was affirmed. The court held that the contract was based upon consideration and that summary jurisdiction existed under the rule of May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870. On this appeal the bank insists there was no jurisdiction to make the summary turn over order.

The subject matter actually involved in the controversy between the parties here so far as the record discloses is simply the costs of the bankruptcy of the bank's debtor and a dividend on a single $325 claim not owned by the bank. At the time the bankruptcy petition was filed such small estate as the bankrupt had was not only subject to the bank's liens and other encumbrances, but had been fraudulently conveyed. Bankruptcy administration of the choses in action that were left would therefore have been expensive and nearly all of such expense would have fallen on the bank as holder of 86 per cent of the claims against the estate.

It could be anticipated that the fees for the mere receiving and distributing of money by the bankruptcy court would be small and it was evidently the bank's purpose in entering into the contract with the trustee in bankruptcy to keep control of the collection of the debt in its own hands and to save itself the expense that would attend any litigation by the trustee concerning the estate of which the bank was beneficiary.

Under the particular circumstances and in view of the small amounts involved and the relative importance of the matter of the control, costs and expense, such retention of control and saving of expense was sufficient consideration for the bank's undertaking to effect a liquidation for the

benefit of the estate through the attachment suit. It was not an improvident agreement. On the contrary, it resulted directly from the agreement that the bank was able to and did collect all that was coming to it and something over, counting the $682 note.

■■ The reasons assigned by the bank for keeping the proceeds instead of turning them over to the trustee for distribution according to its undertaking are not appealing. It is not shown that the bankrupt estate had no valuable interest in the property which had been attached at the suit of the bank. It had an interest which the bankruptcy court had the right to administer upon, liquidate and distribute. Of course that court could not disregard or fail to give effect to the liens owned by the bank or to other encumbrances, but all equities of the bankrupt were subject to the bankruptcy jurisdiction. By its contract with the trustee the bank recognized the right of the bankruptcy court, and having assumed the task of making liquidation and collection for the trustee's benefit, the bank must be regarded as the trustee's agent. On elemental equitable principles, the benefits secured by the agent inured to the principal and were reclaimable by him. We think the trial court rightly held that the decision should be ruled by May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 458, 69 L.Ed. 870.

In that case the president of a bank who held what was in effect a mere chose in action for the account of a bankrupt was required by summary order to turn the amount thereof over to the trustee in bankruptcy, notwithstanding the president had permitted it to pass out of his hands into those of his bank. The court said: "It is well settled that property or money held adversely to the bankrupt can only be recovered in a plenary suit and not by a summary proceeding in a bankruptcy court. Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 S.Ct. 293, 46 L.Ed. 413; First National Bank of Chicago v. Chicago Title & Trust Co., 198 U.S. 280, 25 S.Ct. 693, 49 L.Ed. 1051; Galbraith v. Vallely, 256 U.S. 46, 41 S.Ct. 415, 65 L.Ed. 823. But property held or acquired by others for account of the bankrupt is subject to a summary order of the court which may direct an accounting and a payment over to the trustee or receiver appointed by the bankruptcy court. White v. Schloerb, 178 U.S. 542, 20 S.Ct. 1007, 44 L.Ed. 1183; Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405; Babbitt v. Dutcher, 216 U.S. 102, 30 S.Ct. 372, 54 L.Ed. 402, 17 Ann.Cas. 969; Chicago Board of Trade v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533."

When the Pleasant Hope Bank, pursuant to its contract with the trustee, made the collections in question here for "the benefit of said estate" "to be turned over to the trustee in bankruptcy", it made itself amenable to the summary jurisdiction of the bankruptcy court to compel compliance with the fiduciary obligation to turn over the benefits secured in the course of the agency.

■ The appellant very forcibly presents that the proceeds which it obtained from the settlement made with the bankrupt were in satisfaction of the liens which it held. That it held the liens adversely to the bankruptcy and that its claim to hold the proceeds of the liens adversely can not be deemed colorable merely. But the facts in this particular case differentiate it from cases cited and relied on. Here the problem of the bank was to minimize bankruptcy costs. To accomplish that it was willing to abandon all claims adverse to the trustee and did so by its written undertaking to collect for the benefit of the bankrupt estate. Having by those means retained its complete control of making collection from the debtor and having thereby gotten the full amount of the debt, it is in no position to deny that the collection was made for the benefit of the estate or to assert any adverse claim against the trustee.

The points relied on are properly presented for decision and the two appeals have been disposed of together.

Affirmed.