**BLODGETT v. UNITED STATES.**

No. 13345.

Circuit Court of Appeals, Eighth Circuit.

April 14, 1947.

Richard P. Shanahan, of Kansas City, Mo., for appellant.

Sam M. Wear, U. S. Atty., and Earl A. Grimes, Asst. U. S. Atty., both of Kansas City, Mo., and David A. Thompson, Asst. U. S. Atty., of Richmond, Mo., for appellee.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

STONE, Circuit Judge.

This is an appeal from conviction and sentence of a bankrupt on each of two counts of an indictment. The first count charged a false schedule of property because of omission therefrom of four Vehling banquet cabinets and of three parcels of real estate designated as "The Home Wood Terrace subdivision," "the St. Clair County, Missouri property," and "the Hickory County, Missouri Property." The second count charged fraudulent concealment of this same omitted property and also of "one 1938 Oldsmobile Coach automobile." The sentences were identical and to be served concurrently.

The broad defensive position of appellant at the trial was that he owned none of this property at the times covered in the indictment. The errors urged here have to do with the admission or the exclusion of evidence, a portion of the charge to the jury, abuse of discretion in denial of new trial, and insufficiency of the evidence to sustain conviction. The complaints as to admission of evidence concern the Homewood Terrace property and certain deeds to other lands not covered by the indictment. The exclusion of evidence concerns a judgment in the so-called Clark suit which had to do with the Hickory County property. The point as to the charge to the jury relates to the Oldsmobile automobile.

*Home Wood Terrace.* As described in the indictment, this property was a "subdivision of 22.5 acres situated in Buchanan County, Missouri, of the value of $3000.00, legally described as follows: Home Wood Terrace, a subdivision of 22.5 acres in the Southwest (¼) quarter of Section eleven (11), Township fifty-seven (57), N., Range thirty-five (35), W. Buchanan County, Missouri, Except Lot 13 in Block 6, and Lot 2 in Block 8." The evidence showed warranty deeds conveying this property to appellant "and Mae E. Blodgett, his wife," dated June 14, 1928; from them to B. T. Joyce, dated September 15, 1930; and B. T. Joyce to M. E. Nelson and Claudia V. Nelson his wife, dated January 4, 1932. It was the contention of the Government that Joyce and the Nelsons were not bona fide grantees but were figureheads holding the property for appellant.

After considerable evidence seeking to establish this contention had been introduced by the Government, objection for appellant was made that the property was at no time owned by appellant but was owned by him and his wife "as an estate by the entirety" and, as such, was not subject to the debts of appellant alone and, therefore, was not an asset required to be scheduled in the bankruptcy. This objection was overruled and considerable evidence concerning this property was subsequently introduced. At the close of the Government testimony, appellant was denied an instruction requested on the same grounds.

At the close of all evidence and just before arguments, the Court stated:

"Gentlemen of the Jury, the matter the Court will discuss with you now will be gone into later by the Court in the Court's Charge to you after the arguments, but the evidence which has been submitted with respect to the transfers of Home Wood Terrace, that is, the property that is located on 38th and Mitchell Avenue, or on the Belt Highway, will be withdrawn from the consideration of the jury, so that in arriving at any verdict you may arrive at, you will not take into consideration any transfers with respect to that property and the reason is that the property was originally taken in the name

of Mr. and Mrs. Blodgett—it was an estate by the entirety and the defendant had the right under the law, so far as this proceeding is. concerned, to do whatever he pleased with that property and it was not subject to any debts of the defendant Blodgett, so during the arguments of counsel you may have that question in mind but the Court will go into it later in the Charge to the Jury."

In his charge, the Court stated:·

"The Court stated to you before the arguments began that in arriving at your verdict in this case you would not take into consideration the evidence' with respect to Home Wood Terrace, the property located in Buchanan County. It is the law, Gentlemen, that where a man and wife take title in their joint names that property cannot be subjected to the debts of either of the parties. It might be subjected to the debts of both of them, but not to the debts of one of them. So in this case, this property having been taken in the name of the defendant and his wife in. 1928, they had the legal right to transfer it, to give it away, or to do whatever they chose to do with it so far as the debts and obligations of this defendant are concerned. So under the circumstances, this transfer would not render the defendant guilty of any crime."

In connection with the charge, the Court gave a requested instruction as follows:

"The defendant cannot be charged with making a false oath concerning or with concealing from his creditors the real estate described in the indictment as Home Wood Terrace. Any act or thing done by the defendant and his wife in conveying said Homewood Terrace cannot be considered by the jury as any evidence of guilt upon the part of the defendant in connection with any of the charges in either count of the indictment."

Appellant contends here that he never had any interest in this land except under

the deed from Adams which conveyed it to him and his wife in entirety; that, under the laws of Missouri, an estate in entirety is not subject to individual debts and, therefore, could not be an asset of the bankruptcy estate; and that the action of the Court in withdrawing the evidence as to this land could not and did not remove the prejudice caused by the introduction of the evidence..

Appellee contends that the evidence was admissible and should not have been withdrawn; that, at most, the situation was merely that of an unsuccessful attempt to establish one of the charges in an indictment; that, if error, it is not open here because appellant took no exception or objection to the method of the Court in withdrawing the evidence; that, if error, the action of the Court in withdrawing the matter from the jury cured the error.

█ There is no dispute that the title acquired from Adams vested an entirety in appellant and his wife and that the land so held was not an asset in this bankruptcy.[1]

█ If the subsequent deeds by appellant and wife to Joyce and by Joyce to the Nelsons were bona fide, there would, of course, be no title of any kind in appellant to pass into the bankrupt estate. If these deeds were fraudulent and mere shams, the usual result would be to leave the land subject to the joint but not several debts of appellant and his wife as the real owners by the entirety.

Appellee recognizes that these results would·remove the land from necessity of scheduling in this bankruptcy. Its contention that the evidence was admissible is based on the position that appellant and his wife conveyed to Joyce with the purpose of transferring title to Joyce, as a figurehead, for appellant alone and that the deed from Joyce to the Nelsons was

---

[1] Shipman v. Fitzpatrick, 350 Mo. 118, 164 S.W.2d 912, 913; Baker v. Lamar, Mo.Sup., 140 S.W.2d 31, 35; Dickey v. Thompson, 323 Mo. 107, 18 S.W.2d 388, 393; Kerin ·. Palumbo, 3 Cir., 60 F.2d 480; Phillips v. Krakower, 4 Cir., 46 F. 2d 764, 765; Cullom v. Kearns, 4 Cir., 8 F.2d 437, 47 A.L.R. 432, certiorari denied 269 U.S. 587, 46 S.Ct. 203, 70 L. Ed. 426; and notes in 89 A.L.R. 499, 501, 47 A.L.R. 437 and 35 A.L.R. 151. Also see Hiller v. Olmstead, 6 Cir., 54 F.2d 5 and compare Holden v. Stratton, 198 U.S. 202, 214, 25· S.Ct. 656, 49 L.Ed. 1018.· Pleasant Hope Bank v. Galt, 8 Cir.; 105 F.2d 629 is not in point here.

but another similar step. Appellee indicates evidence which it deems supports its contention. Because there are other reasons for sustaining the action of the trial court as to this issue, we think it unnecessary to determine this contention of appellee. We may state, however, that we have examined this matter far enough to observe that this contention is quite serious.

Whether or not this evidence was admissible in proof of the indictment charges that this property had been improperly omitted from the schedule and had been concealed, the evidence would have been admissible for another and more narrow purpose. As to this property, the evidence was sufficient for submission on the point of a fraudulent purpose to defeat creditors by conveyances to figureheads. The circumstance that the title in entirety made such conveyances unnecessary to protect this property against creditors of appellant is not material as to this purpose since it is quite evident that appellant had no knowledge of the protection afforded by this kind of title. The crux of the fact controversy as to each of the other four properties covered by the indictment was the intention with which the several conveyances or encumbrances there involved had been made. The effort of the Government was, in each instance, to show an intention to defeat creditors thereby. Evidence as to a like wrongful intention as to this property would have been pertinent had the Court properly limited its effect to its bearing on purpose or intent. The trial court has "a measure of discretion in allowing testimony which discloses the purpose, knowledge, or design of a particular person." Glasser v. United States, 315 U.S. 60, 81, 62 S.Ct. 457, 470, 86 L.Ed. 680.[2]

This rule has been applied in cases of prosecution for fraud by bankrupts in connection with their property.[3] It would have been no abuse of discretion had the trial court admitted this evidence under a clear limitation of its effect to the purpose or intent which appellant had as to conveyances involving the other items in the indictment. By the entire withdrawal of this evidence by the Court, appellant secured more than his right. We do not state this particular matter as a ground for sustaining the action of the Court but it has direct bearing upon the propriety of the action the Court did take.

As hereinbefore quoted, the action taken by the Court was to direct the jury, before argument, that the Home Wood Terrace property was withdrawn from consideration; the charge was to the same effect; and a like requested charge was given. Each of these repeated actions of the Court was clearly and definitely expressed.

Certainly the Court did everything it could do to assure elimination of this evidence from the consideration by the jury. No exception was taken to these actions of the Court or to their sufficiency to meet the situation. No motion for mistrial was filed. So far as this record shows, appellant was satisfied. Now, appellant contends strongly that this action of the court could not remove the prejudice created by the introduction of a relatively large amount of testimony as to this particular property.

This contention must be denied for either of two reasons. First, this action of the Court was unchallenged in any manner or on any ground by appellant. Second, the action of the court in clearly withdrawing this evidence cured any error from its admission.

---

[2] Lisenba v. People of State of California, 314 U.S. 219, 227, 62 S.Ct. 280, 86 L.Ed. 166; Williamson v. United States, 207 U.S. 425, 450-451, 28 S.Ct. 163, 52 L.Ed. 278; and cases in this Circuit as follows, Kempe v. United States, 8 Cir., 151 F.2d 680, 688; King v. United States, 8 Cir., 144 F.2d 729, 732, certiorari denied 324 U.S. 854, 65 S. Ct. 711, 89 L.Ed. 1413; Brickey v. United States, 8 Cir., 123 F.2d 341, 344; Nigro v. United States, 8 Cir., 117 F.2d 624, 632, 133 A.L.R. 1128; Neff v. United States, 8 Cir., 105 F.2d 688, 691; Hartzell v. United States, 8 Cir., 72 F. 2d 569, 584, and there are many earlier cases in this Circuit.

[3] Levy v. United States, 8 Cir., 35 F. 2d 483, 485; Beaux Arts Dresses v. United States, 2 Cir., 9 F.2d 531, 533; Green v. United States, 2 Cir., 240 F. 949, 951.

■ As to the first reason. The surest method of protecting an accused from prejudicial error during trial is his right to object to any matter, to have a ruling thereon, and to preserve such objection and ruling for review. While objections by appellant to introduction of this evidence were overruled during introduction of evidence, yet the Court carefully and clearly directed the jury, before argument, that this evidence was withdrawn and that no conviction could be had as to this item in the indictment. After argument, the Court granted a request to charge to the same effect and, in his charge, again clearly and carefully withdrew this evidence and item. Exceptions were taken by appellant to other features of the charge but none as to this matter. The long established rule is, as stated in United States v. Atkinson, 297 U.S. 157, 159, 56 S.Ct. 391, 392, 80 L.Ed. 555, that:

"The verdict of a jury will not ordinarily be set aside for error not brought to the attention of the trial court. This practice is founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact."

This rule governs but:

■ "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." 297 U. S. p. 160, 56 S.Ct. 392.

Therefore, the failure to object to these actions of the Court withdrawing this matter from the jury as not being sufficient denies review of such actions unless the admission of such evidence was so prejudicial as to bring it within the just quoted exception to the rule. Whether it was so prejudicial has to do with the second reason.

As to the second reason. This being a criminal case, we have most particularly examined this entire record with a view of testing whether the admission of this evidence was so obviously improper and so harmful that its effect was not cured by the actions of the trial court in withdrawing it from the jury.

■ In view of the position of the Government, at the trial and here, that this evidence was competent—a position we regard as serious but which we do not resolve—and in view of our determination above that this evidence was admissible, at least for a limited purpose, it cannot be said that the admission of this evidence was so obviously error and so seriously harmful. On the contrary, there is grave doubt as to the propriety of withdrawing the evidence absolutely. In addition, we are convinced that no prejudice resulted from such admission. Roberts v. United States, 8 Cir., 96 F.2d 39, 41; Scheff v. United States, 8 Cir., 33 F.2d 263, 265.

*Deeds to Other Lands.* This point has to do with a warranty deed and a deed of trust on land in St. Clair County not included in the land covered in the indictment. The contention is that the deeds were incompetent because not covering land charged in the indictment and because appellant was not a party to the deeds and is not shown to have had any connection with or knowledge of the deeds.

In the case of each deed, it was admitted expressly for the limited purpose of showing the use of the name of B. T. Joyce in connection with some transfers of land. B. T. Joyce was Beulah T. Joyce stepdaughter of appellant. She appears in connection with each item of property charged in the indictment. It was the contention of the Government that she held title to or encumbrance on each of these items for appellant in his alleged plan to conceal his assets.

■ The record is so bare as to the warranty deed that the only thing clear is that "B. T. Joyce" was a party to the instrument. From other evidence, it is inferred that she was the grantee. The deed of trust was from "B. T. Joyce, a single *man* [italics added], Buchanan County, Missouri" and was, apparently, from other evidence, given to secure part

of the purchase price under the warranty deed. A similar situation has been discussed hereinbefore in connection with the Homewood evidence as bearing on intent, purpose, etc. The difference here is that there is no showing that appellant ever had any interest in this land. The circumstance that the deed of trust was by her, described as a "single man," which appears in other transfers wherein appellant was interested has a somewhat attenuated but not entirely absent bearing on her connection with the character of transactions under attack here. The admissibility is doubtful but certainly not prejudicial.

*The Clark Suit.* This matter is the exclusion from evidence of a decree of a State trial court in an action by P. J. Clark against Raymond J. Blodgett, Mae E. Blodgett, Beulah T. Hall [B. T. Joyce], et al., to quiet title to the same Hickory County land, which is charged in the indictment to have been fraudulently omitted from the schedule and concealed. Clark did not appear at the trial or contest further than his pleadings. Evidence was introduced by Beulah T. Hall on her cross petition and answer. Among the findings in this decree are the following:

"The Court further finds that neither Raymond J. Blodgett nor Mae E. Blodgett ever had any right, title or interest in or to said premises.

"The Court further finds that on January 13th, 1943, Raymond J. Blodgett filed his petition in the District Court of the United States for the Western District of Missouri (St. Joseph Division) in which district he was then a resident, praying to be adjudicated a bankrupt; that said court had jurisdiction of said cause of action and of his person; that he was by said court adjudicated a bankrupt and was thereafter legally discharged, and discharged from all of his debts, obligations and judgments; that the plaintiff P. J. Clark at that time held a judgment against him, which the said Raymond J. Blodgett has listed as a debt and liability and that he was released therefrom by the discharge of bankruptcy.

"The Court further finds that the plaintiff P. J. Clark well knew all of said facts and well knew that said judgment was no longer in effect, and well knew that the said Raymond J. Blodgett has been discharged as a bankrupt, and well knew that he had been released from said judgment, but that never the less he, the said P. J. Clark after said discharge had been granted to the said Raymond J. Blodgett had an execution issued from the office of the Clerk of the Circuit Court of Buchanan County, Missouri in which Court said judgment had been rendered and directed to the Sheriff of Hickory County, Missouri, and claiming that Raymond J. Blodgett was in fact the owner of the premises hereinbefore described, had said Sheriff sell said premises and deliver to him a Sheriff's Deed conveying said premises; that he placed said deed of record and the same is recorded in Deed record 96 at Page 196 of the records in the Recorder's Office of Hickory County; that he claims that under and by virtue of said deed he owns said premises and has and holds an interest therein which would be and is adverse to the title and interest of the defendant, Beulah T. Hall; that he has instituted several suits against the defendant, Beulah T. Hall setting forth such claims but has failed and refused to get them to trial or to fully prosecute them to final determination.

"The Court further finds that said Sheriff's Deed casts a cloud upon the title of this defendant."

The decree declared title in Beulah T. Hall and set aside the sheriff's deed to Clark.

The supporting argument for appellant is that the trustee in bankruptcy is bound by this decree and, since he could not recover this property, for the estate, appellant cannot be criminally liable for not scheduling it or for concealing it.

■■■■ It is unnecessary for us to examine whether or not the trustee in bankruptcy would be bound by this decree. The decree was not competent evidence for any purpose. It is not res judicata nor can it be an estoppel by judgment because the parties plaintiff in the two suits are neither the same nor in privity—they are total strangers—and the nature of the ac-

54

tions are entirely different. Greenbaum v. United States, 6 Cir., 280 F. 474, 477, is directly in point and see Burt v. Union Central Life Ins. Co., 187 U.S. 362, 367, 368, 23 S.Ct. 139, 47 L.Ed. 216; Stone v. United States, 167 U.S. 178, 184, 17 S.Ct. 778, 42 L.Ed. 127; Shanberg v. Saltzman, 1 Cir., 69 F.2d 262, 263; 31 A.L.R. 262. The decree is not evidence of lack of criminal intent because it was entered after the schedule was filed and after the concealment is charged to have occurred.

**The Oldsmobile.** This issue has to do with a claimed error in the charge to the jury. The only charge in the indictment as to this automobile was, in 'Count 2, for concealment. It was not included in Count 1 for false .nd fraudulent scheduling. The charge to the jury covered the automobile under both Counts. Obviously, this was an inadvertent error in so far as inclusion under Count 1. This error is not useful to appellant for two reasons. First, no exception was taken to the charge nor was this matter made a ground for appeal. It is noticed for the first time in the brief on appeal. Lambur v. Yates, 8 Cir., 148 F.2d 137, 138. Second, even if we should consider the merits of this point, there is clearly no prejudice because the sentences were only for imprisonment, were identical and were to be served concurrently.

*New Trial.* This matter has to do with two items in the indictment. The first relates to the Vehling Cabinets and the second to the Oldsmobile automobile. The testimony for appellant as to the cabinets was that they had been sold by him to "Gillen A. Hall or Beulah T. Hall" as evidenced by a bill of sale to protect them on account of money borrowed and that he had delivered such bill of sale to Gillen A. Hall. As to the Oldsmobile, that it was covered by a chattel mortgage to secure a note for $800 to G. [Gillen A.] Hall. The Cabinets were not included in the schedules. The Oldsmobile was included with the statement "owe $800.00 on chattel mortgage on same no equity, value of same is about $200.00."

Gillen A. Hall testified that he never had any knowledge of either the bill of sale or of the note and chattel mortgage until

sometime after November 1, 1945, and none of them had ever been delivered to him —the schedules were filed January 13, 1943.

Verdict of guilty was returned on March 11, 1946. On March 14, 1946, motion for new trial was filed on various grounds including newly discovered evidence based on the claimed false swearing of Hall as to the foregoing matters. This claim was based upon an attached affidavit by Hall (dated March 12, 1946) which repudiated his testimony in detail. Therein he stated that the Cabinets were covered by a bill of sale delivered to him and his wife and that they were their property except three which had been sold by his wife. Also he stated that the note and mortgage on the Oldsmobile were valid and represented a valid indebtedness to him from appellant.

A few days later, the Government filed two counter-affidavits. One of these was by Hall. Therein, he stated the circumstances under which he had made his affidavit of March 12 as being that appellant's wife had cried and prevailed on him, pleading it would help cut down the sentence; would not make any difference to him (Hall) and would not be known. Moved by this solicitation, he had gone with her to the office of an attorney for appellant who had dictated the affidavit he executed. Then he stated his testimony at the trial was "absolutely true"; and that he never knew anything about the bill of sale or the note and chattel mortgage until he saw them in the office of the Federal Bureau of Investigation months after the schedules had been filed.

The other counter-affidavit was by a special agent of the Federal Bureau of Investigation who stated that he had taken a signed written statement of Hall on October 8, 1945, of which a photostatic copy was attached. This copy showed Hall as stating that he did not know of the existence of the bill of sale until shown it in the Bureau office; and that he knew nothing about any chattel mortgage on the Oldsmobile.

The contention advanced here is that the court abused its discretion in denying a new trial on the ground of false testimony and perjury by Hall at the trial in

respect to the bill of sale and the note and chattel mortgage.

In United States v. Johnson, 327 U.S. 106, 111, 66 S.Ct. 464, 466, the Court states:

"We think it important for the orderly administration of criminal justice that findings on conflicting evidence by trial courts on motions for new trial based on newly discovered evidence remain undisturbed except for most extraordinary circumstances."

And again (327 U.S. 111, 66 S.Ct. 466):

"While the appellate court might intervene when the findings of fact are wholly unsupported by evidence * * * it should never do so where it does not clearly appear that the findings are not supported by any evidence."

Applying these broad precepts to the affidavits here, it is clear that we should not disturb the determination of the trial court in denying new trial. While the trial court made no formal "findings of fact" on this motion, it did determine the facts as a necessary basis of a ruling on the motion. The court had seen and heard Hall testify at the trial. He had before him the affidavits. He could evaluate any pressures under which they were executed. He could compare the signed statement (attached to a counter affidavit) with the testimony of Hall and with the statements in his recanting affidavit filed in support of the motion. Considering these same matters, it is impossible for us to believe that his conclusion is "not supported by any evidence."

Appellant urges strongly the decision in Pettine v. Territory of New Mexico, 8 Cir., 201 F. 489. That was a conviction for murder with a sentence of forty five years. There an important witness for the prosecution had, after trial, executed an affidavit completely recanting his testimony. This court (page 494) stated:

"Was that a fair trial in which this false testimony was thrown into the wavering balance at the close of the trial too late for the defendant to demonstrate its falsity? Is it clear beyond doubt that this testimony did not turn the scales against him or remove from the mind of some juror a reasonable doubt of his guilt? Can it be truthfully said that it was not a gross abuse of its discretion for the trial court to refuse to grant a new trial here and to refuse to exclude this false testimony from the minds of the triers of this fateful issue on which 45 years of the life of the defendant hung? The penalty the defendant was adjudged to suffer is heavy, the issue here presented is grave, and the conclusion derived from a careful reading and consideration of all the evidence in this case is that each of those questions should have been answered in the negative, and that the Supreme Court of the territory erred in its affirmance of the denial of the motion for a new trial."

Also, appellant relies upon Martin v. United States, 5 Cir., 17 F.2d 973, certiorari denied 275 U.S. 527, 48 S.Ct. 20, 72 L.Ed. 408 where an affidavit recanting essential testimony was filed in support of a motion for new trial. While affirming denial of new trial because the court deemed the affidavit not freely given, the court there stated (976 of 17 F.2d):

"In our opinion it is the duty of a trial court to grant a new trial, where a witness at the original trial subsequently admits on oath that he committed perjury, or even that he was mistaken in his testimony, provided such testimony related to a material issue, and was not merely cumulative."

Also, appellant cites United States v. Miller, D.C.S.D.N.Y. 61 F.Supp. 919 and Firotto v. United States, 8 Cir., 124 F.2d 532. The Firotto case is not in point or helpful here.

Taken at face value, the Pettine and the Martin cases are against the decided weight of authority, see copious notes in 33 A.L.R. 550, 74 A.L.R. 757 and 158 A.L.R. 1062. Also compare Hysler v. Florida, 315 U.S. 411, 417, 62 S.Ct. 688, 86 L.Ed. 932 et seq. The quoted broad language of the Martin case is much modified by the later case, in the same court, of Perry v. United States, 5 Cir., 39 F.2d 52, 54.

However, doubtful may be the rule announced in the Pettine case, it is not determinative of this case because there is a vital difference here in the fact situation.

In the Pettine case, the recanting affidavit was unchallenged.[4] Here there were strong counter affidavits. One by Hall explaining the circumstances under which he gave the first affidavit and unequivocally repudiating that affidavit and reaffirming his testimony at the trial. The other presenting a written statement made by him months before the trial, which statement is in direct line with his testimony at the trial. This fact situation is essentially different from that in the Pettine case and is thereby removed from the reasoning and the result of that doubtful decision.

One of the only two federal cases cited or which we have been able to find which is similar—though not the same and weaker than this case on the fact situation—is the Miller case. The Miller case is not at all opposed to the ruling of the trial court here. It is simply an instance where a trial court, in the exercise of its discretion, reached a different result on a somewhat similar fact situation.

The other federal case is Larrison v. United States, 7 Cir., 24 F.2d 82 which was an instance of a recanting affidavit and a later affidavit repudiating the recantation—the situation here. The matter came before the Court of Appeals on a motion to remand to the trial court on the ground of newly discovered evidence. The motion was supported by the recantation affidavit. The Government filed the later repudiation affidavit. The Court deemed the motion as dependent upon a sound exercise of its discretion. It considered the affidavits and other matters as shown in the appeal record. The motion was denied. This decision is, in effect, direct authority that granting a new trial where there are recanting and repudiating affidavits is a matter of sound discretion.

Where there are counter affidavits, the practically unanimous holdings in state courts have been to support denial of new trial by the trial court as an exercise of discretion not to be disturbed. 39 Am. Jur. p. 197 § 198, n. 2; 158 A.L.R. 1074, Mack v. State, 203 Ind. 355, 180 N.E. 279,

284, 83 A.L.R. 1349, 1357; 74 A.L.R. 760.

 *Substantial Evidence.* Appellant contends that there was no substantial evidence to support the verdict of guilty. We have carefully read and considered the entire record. As a result, this contention must be denied.

The judgment must be and is affirmed.

---

[4] While not a case of recantation, it may be noted that an unchallenged affidavit supporting a motion for new trial need not be accepted at controlling face value, see Glasser v. United States, 315 U.S. 60, 87, 62 S.Ct. 457, 86 L.Ed. 680.