STURGEON *v.* STATE OF INDIANA.

[No. 29,477. Filed June 24, 1957.]

*L. N. Savage,* of Rockport, *L. A. Savage,* of Jasper, *William P. Birchler,* of Cannelton, and *James P. Savage,* of Clinton (of counsel), for appellant.

*Edwin K. Steers,* Attorney General, *Owen S. Boling* and *Merl M. Wall,* Deputy Attorneys General, for appellee.

BOBBITT, J.—Appellant was charged by indictment with murder in the second degree under Acts 1905, ch.

169, §350, p. 584, being §10-3404, Burns' 1956 Replacement, tried by jury, found guilty as charged and sentenced to the Indiana State Prison for life.[1]

The sole error assigned is the overruling of appellant's motion for a new trial. Several specifications or grounds therefor are assigned.

*First:* We shall consider specification 1 which alleges error in the admission into evidence of two statements made by appellant and introduced as State's Exhibits No. 6 and No. 8. Exhibit No. 6 was a statement made and signed by appellant at the police station on the morning following the shooting, stating that the deceased Mollie Taylor's death was due to suicide. This statement could in no way be construed as a confession by appellant. In fact, it was a denial of guilt and favorable to him. Appellant has failed to show in what manner, if any, that his substantial rights were prejudiced by the introduction of such statement (State's Exhibit No. 6) into evidence, and we cannot see how he was harmed thereby. Its admission was not reversible error.

State's Exhibit No. 8 was a statement made by appellant under the following circumstances: On the second day after his arrest appellant was to be taken, at his request, to Indianapolis, Indiana, to take a lie detector test. The roads were bad and the trip was postponed until the next day, which was

1. Appellant was indicted on January 24, 1955, and on January 25, 1955, was arraigned, plead guilty, and sentenced to the Indiana State Prison for life and was committed on the same day.

On December 17, 1955, his petition for writ of error *coram nobis* was granted, at which time the judgment of January 25, 1955 was vacated and set aside; and a new trial was granted appellant and he was returned to Perry County, Indiana, to be held in jail awaiting further order of the court, and this appeal is from the judgment in his new trial granted on petition for writ of error *coram nobis*.

the day of the funeral of the victim of the shooting. On the evening before the funeral the sheriff asked appellant if he wanted to view the body of the deceased before the funeral. Appellant said that he did, and was taken to the funeral home where he saw the body of the victim on the morning of the funeral, and before leaving for Indianapolis in custody of the sheriff to take a lie detector test.

They stopped at the State Police Station in Jasper, Indiana, and as appellant got out of the car he asked the sheriff if he could talk with him privately. Appellant was then taken to a room in the State Police Post where he said that there was no "use to go any further. Since I've seen Mollie I have decided to tell the truth, I killed her." He then made a complete statement which was reduced to writing and signed by him, and, in pertinent parts, is as follows:

> "This statement has been voluntarily made by me and each page thereof has been carefully read by me and is understood and I am executing the same voluntarily and of my own free will without any threats, duress or inducement of any kind or nature, and I so swear that everything contained herein is true and correct this 20th day of January, 1955.

> \* \* \* \*

> "Sometime in January, 1954, I returned to Perry County, Indiana from Chicago, Illinois where I had been living. . . . In January or February, 1954, I met Mollie Taylor for the first time and at this time she was married to Edward Taylor. In September, 1954, Mollie Taylor got her divorce from Edward Taylor and also in this same month she and I went to Chicago, Illinois for about one week and when we returned to Perry County she started living with me in my home that I make for my parents, my mother, Janie Moranz, and my stepfather Andrew Moranz. She has lived with me continuously since that time. We never were married. We always lived together in harmony except for a

few little spats. In sometime in the fall of 1954 Mollie Taylor made her life insurance over to me. This was insurance that she carried on herself where she worked at the General Electric Company Plant at Tell City, Indiana.

\* \* \* \*

"On this January 17, 1955 in Perry County, Indiana I went from the Bristow, Indiana Tavern to my home at Saffaras, Indiana and when I got there it was around 7:00 P.M. and Mollie Taylor was upstairs. . . . I went upstairs where Mollie was and we started talking about her grandson. . . . At this time we did not have any argument but only talked. For some reason I walked to the corner of the room and pick up the 12 gauge single barrel shotgun and shot Mollie with this gun. I do not know why I did this. When I shot her she fell to the floor and she did not say anything. Sometime I put a pillow under her head and then went down stairs and told the boys to go call the Sheriff. While the Sheriff was coming I made up my mind that I would tell that Mollie shot herself. This morning when I went to see Mollie and I looked at her I knew that she would want me to tell the truth and this I have done the best that I can."

A confession is prima facie admissible and the burden of showing its incompetency is upon the defendant. *Caudill* v. *State* (1946), 224 Ind. 531, 538, 69 N. E. 2d 549; *Schuble* v. *State* (1948), 226 Ind. 299, 304, 79 N. E. 2d 647; *Pearman* v. *State* (1954), 233 Ind. 111, 115, 117 N. E. 2d 362; *Randolph* v. *State* (1955), 234 Ind. 57, 68, 122 N. E. 2d 860.

Appellant does not contend that the trial court's ruling was not justified on the evidence which was already in the record. He merely asserts that the admission of the statement without a preliminary examination on the question of admissibility out of the presence of the jury was error.

In *Mack* v. *State* (1932), 203 Ind. 355, at page 372, 180 N. E. 279, 83 A. L. R. 1349, this court said:

"If the admission of a confession in evidence is objected to by a defendant, the question of whether or not it is competent is one for the court to determine. In the absence of the jury, the court should hear evidence as to the circumstances under which the confession was made, and the burden of proving the confession incompetent is upon the defendant." Citing authorities. See also: *Caudill* v. *State, supra* (1946), 224 Ind. 531, 538, 69 N. E. 2d 549; *Pearman* v. *State, supra* (1954), 233 Ind. 111, 114, 117 N. E. 2d 362.

Appellant made no objection to the failure of the court to hold such preliminary hearing, nor did he offer to produce evidence to show the incompetence of such confession. Hence, any question relating thereto is waived.

*Second:* Specifications 2 to 8, inclusive, question the introduction of testimony of certain witnesses relating to the making and signing of the statement of appellant which was introduced as State's Exhibit No. 8. Appellant made the same objection to all of the questions which are the subject of specifications 2 to 8, inclusive, as was made to the introduction of State's Exhibits No. 6 and No. 8. These questions were proper and the trial court did not err in permitting the several witnesses to answer them, over the objections of appellant, for the same reason that State's Exhibit No. 8 was properly admitted into evidence.

*Third:* Appellant asserts that the trial court erred in giving, over his objection, court's Instruction No. 7 concerning malice, and in refusing to give Instructions Numbered 5, 10, 11, 14, 15, 24, 25 and 26, tendered by him.

Appellant has failed to set out in his brief all the instructions given or tendered which "have a bearing upon the questions raised."

In *Woods* v. *State* (1955), 234 Ind. 598, 603, 130 N. E. 2d 139, it is stated:

"Rule 2-17 of this court requires appellant's brief contain 'so much of the record as fully presents every error and objection relied upon . . . . When error is predicated on the giving or refusal of instructions, the statement of the record must contain, in addition to the instructions given or refused which are complained of, all the instructions given or tendered which have a bearing upon the questions raised'."

Because of the failure to comply with the provisions of the above rule, no question is presented for our consideration on the rulings on the refusal of the trial court to give certain of appellant's tendered instructions above mentioned and in giving court's Instruction No. 7.[2] *Woods* v. *State, supra.*

*Fourth:* Appellant asserts that the verdict of the jury is not sustained by sufficient evidence. Examining the record for evidence most favorable to the State we find the accused and the deceased, Mollie Taylor (or Mollie Sturgeon), had been living together in an upstairs room in the home of his mother and stepfather for some months. Early in the evening of January 17, 1955, the accused and Mollie were in their room, while his mother, stepfather and three teen-age cousins were watching television in the living room downstairs. There was a noise from the upstairs room which only the stepfather identified at the time as a shot from "some weapon," followed by a groan and the

2. Because of the severity of the sentence herein we have examined the record to ascertain whether or not error was committed in the giving or refusing to give the instructions about which appellant complains and we find (1) that court's Instruction No. 7 correctly stated the law and was applicable to the evidence in this case, hence it was properly given; (2) that the substance of appellant's tendered Instructions Numbered 5, 10, 14, 15, 24 and 25 is covered by other instructions given by the court and for this reason the court did not err in refusing to give them; and (3) that there was no evidence to support appellant's tendered Instruction No. 11, and Instruction No. 26 was an incomplete statement of the law by failing to include the element of reasonable doubt. Hence they were properly refused.

sound of a body falling to the floor, which latter sounds were identified by the three teen-age boys as well. Almost immediately thereafter the appellant came downstairs with blood on the right sleeve of his shirt and on his chest. He said, "Turn the light on. It's all over, Mom and Boys. She's dead and I did it, this is the way God planned it. I'm going with her."

When police officers and the sheriff arrived, they found Mollie Taylor's body lying on the floor of the upstairs room with her feet extending under the bed. There was a pillow under her head. The accused identified a shotgun which was in the room as the one which had caused her death. The coroner examined the body the same night. There was a shotgun wound in her abdomen with powder burns around it to a diameter of about four inches; there was some wadding in the wound itself. The shot had entered at the eighth rib and ranged downward about two inches from the point of entry. The immediate cause of death was a severed abdominal aorta.

The evidence above summarized, plus the confession of appellant hereinabove set out, is sufficient to sustain the verdict of the jury.

Finding no reversible error the judgment of the trial court must be affirmed.

Judgment affirmed.

Arterburn, C. J., Emmert, Landis and Achor, JJ. concur.

NOTE.—Reported in 143 N. E. 2d 411.